# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| ERIC N. SCHAEFER, | ) |
| Petitioner, | ) ) ) |
| vs. | ) ) Case No. 15-0275-CV-W-ODS-P |
| RONDA PASH, | ) ) ) |
| Respondent. | ) ) |

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING THE ISSUANCE OF A CERTIFICATE OF APPEALABILITY**

Petitioner, Eric Schaefer, filed this pro se habeas corpus petition pursuant to 28 U.S.C. § 2254 on April 13, 2015, seeking to challenge his 2012 conviction and sentence for domestic assault in the first degree, which was entered in the Circuit Court of Jackson County, Missouri, after he pleaded guilty to that offense.

Petitioner asserts two (2) grounds for relief: (1) that plea counsel was ineffective by providing false information to petitioner regarding the plea agreement; and (2) that petitioner's plea is invalid due to incompetency in that he "was tortured in jail for three years and then forced to accept" the terms of the plea agreement. Respondent contends that Ground 1 is without merit and that Ground 2 is procedurally defaulted.

**FACTUAL BACKGROUND**

On appeal from denial of petitioner's post-conviction relief motion, the Missouri Court of Appeals, Western District, summarized the facts of the case:

> On November 6, 2009, the State charged Schaefer with one count of the class A felony of domestic assault in the first degree, in violation of § 565.072, RSMo, and one count of the class C felony of felonious restraint, in violation of § 565.120. In exchange for Schaefer's guilty plea, the State reduced the assault charge to a Class B felony, dismissed the count of felonious restraint, and agreed

that it would not recommend that Schaefer be sentenced to more than ten years' imprisonment. Pursuant to the agreement, Schaefer plead [sic] guilty to one count of class B felony domestic assault in the first degree on June 26, 2012. On July 23, 2012, the court sentenced Schaefer to seven years in prison.

On November 20, 2012, Schaefer timely filed a *pro se* motion for post-conviction relief under Supreme Court Rule 24.035. The court appointed counsel and an amended motion was filed on July 23, 2013. The amended motion alleged, in relevant part, that Schaefer received ineffective assistance of counsel because his plea counsel misrepresented to him that he would receive a sentence of approximately three years, equivalent to the time he had already served.

The motion court held an evidentiary hearing on November 8, 2013, at which Schaefer and his plea counsel testified. Plea counsel testified that he told Schaefer that, under the plea agreement, the court could sentence him to up to ten years in prison. Conversely, Schaefer testified that counsel assured him he would be sentenced to "time served," or approximately three years.

Following the hearing, the motion court denied the amended motion. Schaefer appeals.

Respondent's Exhibit E, p. 2.

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. Marshall v. Lonberger, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. Graham v. Solem, 728 F.2d 1533, 1540 (8th Cir. en banc), cert. denied, 469 U.S. 842 (1984). It is petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254(e)(1).[1] Because the state court's findings of fact have fair support in the record and because petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

---

[1] In a proceeding instituted by an application for writ of habeas corpus by a person in custody pursuant to a judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## GROUND 1 – INEFFECTIVE ASSISTANCE OF PLEA COUNSEL

Petitioner contends that he received ineffective assistance of plea counsel because counsel failed to adequately explain the plea agreement to petitioner. Specifically, petitioner contends that he was given false information about his plea deal and that he believed he would be sentenced to "time served" upon entering a guilty plea.

In order to succeed on a claim of ineffective assistance of plea counsel, petitioner must show that counsel's representation fell below an objective standard of reasonableness, and "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). Reasonably effective assistance of counsel may be defined as the skill and diligence that a reasonably competent attorney would exercise under similar circumstances. See, e.g., Strickland v. Washington, 466 U.S. 668, 687-90 (1984).

"Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction . . . ." Id. at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. This Court may not grant habeas relief unless the state court's decision "was contrary to, or an unreasonable application of, the standard articulated by the [United States] Supreme Court in Strickland." Owens v. Dormire, 198 F.3d 679, 681 (8th Cir. 1999), *cert. denied*, 530 U.S. 1265 (2000).

"A court considering a claim of ineffective assistance of counsel must apply a 'strong

presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 131 S. Ct. 770, 787 (2011) (quoting Strickland, 466 U.S. at 689). Petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687.

The Missouri Court of Appeals, Western District, denied petitioner's claim, as follows:

> Schaefer claims that the motion court erred in denying his Rule 24.035 motion because his plea counsel informed him that, at most, the court would sentence him to "time served" – three years in prison. He was instead sentenced to seven years. He asserts that if his attorney had properly advised him that he could be sentenced to up to ten years in prison, he would not have pleaded guilty, but would have gone to trial.
>
> A guilty plea not only admits guilt but also consents to judgment of conviction without a jury trial. Accordingly, a guilty plea must be a voluntary expression of the defendant's choice, and a knowing and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences.
>
> *State v. Roll*, 942 S.W.2d 370, 375 (Mo. banc 1997); *see also Thurman v. State*, 424 S.W.3d 456, 459 (Mo. App. E.D. 2014).
>
> "A mistaken belief about sentencing affects a defendant's ability to knowingly enter a guilty plea if the mistake is reasonable and is based upon a positive representation upon which the movant is entitled to rely." *Kennell v. State*, 209 S.W.3d 504, 508 (Mo. App. E.D. 2006) (citing *Dorsey v. State*, 115 S.W.3d 842, 845 (Mo. banc 2003). "While an individual may proclaim he had a certain belief and may subjectively believe it, if it was unreasonable for him to entertain such a belief at the time of the plea proceeding, relief should not be granted." *Krinder v. State*, 44 S.W.3d 850, 857 (Mo. App. W.D. 2001). Mere predictions of counsel as to sentencing will not lead to a finding of legal coercion rendering a plea involuntary. *Jenkins v. State*, 9 S.W.3d 705, 712 (Mo. App. S.D. 1999).
>
> At the post-conviction evidentiary hearing, Schaefer testified that his plea counsel assured him that, under the plea agreement, he would be sentenced only to the time he had already served:
>
>> Q. What do you remember your attorney explaining to you about the plea offer?

A. He didn't explain the plea regimen to me at all. He just pretty much told me that I would get time served if I took this plea. And I didn't want to do it initially. Then that was when I was in general population. And I told him that I could beat it and I was so confident I could beat it and that I've already been in jail for 2 ½ years. And what's the point now in trying to save myself any time? You know. So I told him no.

And then I – after I got put on the suicide precaution cell, I pretty much gave in because of the torturous conditions in the jail and that particular module and that cell, the kind of treatment that I had to endure, I went ahead and I made contact, I had my mother contact [plea counsel] and told him that I'd go ahead, if the deal was still on the table, that I would take the plea.

. . . .

Q. Mr. Schaefer, when you pled guilty, did you believe that you could get more than time served?

A. No I thought – no. I thought it was written in stone, so to speak. I don't know anything about an open lid. Why would I – why would I wait three years for an open-lid plea?

. . . .

Q. Do you recall during the guilty plea that the judge told you that the range of punishment for a Class C felony is 5 to 15 years in prison?

A. . . . I did not – I wasn't feeling comfortable enough to process information. I was very much just – I was very much just rhetorically answering questions. Okay?

Q. Do you recall that the judge went over the lid of ten years with you at the guilty plea?

A. I might have, yeah. But like I said, I was just following instructions. I had made up my mind at that point that I was going to take this plea because I thought that I was going to get time served, the three years that I was promised, which would have got me out of the torturous, horrendous conditions that I was in, okay? . . . I wasn't trying to process any information that the judge was asking me. I didn't feel like I had an open window to speak freely anyway.
Tr. 18:24-19:15; 21:2-7; 21:11-22:5.

Schaefer's testimony that counsel promised him a three-year sentence was contradicted by plea counsel's testimony:

A. I laid out the plea offer. And what I believed about the plea offer. And the possibilities of what would happen if he went to trial. And I expressed to him my personal opinion, what I felt was a pretty good plea offer under the circumstances, and I said but I was also willing to take the case to trial if he wanted me to.

Q. Do you remember if you told him anything about what you believed the outcome of his sentence would be?

A. No. I told him what the – what could happen. The judge could reject it. I laid out the parameters of it.

Tr. 6:22-7:6.

On cross-examination, Plea Counsel again reiterated that he fully explained the plea agreement to Schaefer:

Q. . . . Regarding the agreement in this case, as you explained earlier, it what's called a plea up with a lid of ten years?

A. Yes.

Q. And you would have explained to the movant, that a plea up with a lid of ten years is not a guarantee of three years, and it's in fact not a guarantee of any years, is it?

A. That's correct. That's what I would have explained to him.

Q. And you would have explained to your client, the movant in this case, that in a plea up with a lid of ten years you can get anything from the lower range all the way up to ten years?

A. Yes.

Q. So there were no promises made to him that he was going to get three years?

A. No.

Tr. 10:2-19.

The claims Schaefer made at the post-conviction evidentiary hearing were also contradicted by his testimony at his plea hearing. At sentencing the court asked the following questions of Schaefer regarding both his understanding of the agreement and whether he was freely pleading guilty:

The Court: . . . and at the time of sentencing the Court would not be able to sentence the defendant to more than ten years in the Missouri Department of Corrections . . . . [¶] Mr. Schaefer, is that your understanding?

The Defendant: Yes, Your Honor.

. . . .

[The Court]: Within the last 48 hours have you consumed any type of drugs or any type of medication?

A. No.

Q. Within the last 24 hours have you consumed any alcohol?

A. No.

Q. Are you presently under the care of any psychologist or psychiatrist apart from the issues that we've dealt here today regarding your competency?

A. No.

. . . .

Q. Have you discussed with your attorney what the range of punishment is for the offenses that you are pleading guilty to if you did not have a partial plea agreement?

A. Yes.

. . . .

Q. [At sentencing,] [t]he State of Missouri would also give a recommendation of what they feel the appropriate sentence should be, but they cannot request more than ten years. Do you understand that?

A. Yes.

Q. And do you understand, sir, that I'm not bound by the State's recommendation; I'm not bound by your attorney's recommendation; but I'm bound that I could not give you more than ten years? Do you understand that?

A. Yes.

Q. Is this your understanding of the partial agreement that you have?

A. Yes.

Q. Knowing that this is the agreement that I will accept, do you want me to accept your plea of guilty on Count I here today?

A. Yes.

. . . .

Q. Has anyone forced you or coerced you in any way to make you plead guilty here today?

A. No.

. . . .

Q. Has anyone promised you anything other than the partial agreement that you have in order to make you plead guilty here today?

A. No.

Plea Tr. 7:1-7; 9:25-10:9; 10:17-20; 13:11-14:2; 17:11-13; 17:17-20.

Although the motion court did not make an express finding that Schaefer's testimony was not credible, it found that his ineffective-assistance claim was "clearly refuted by his own statements during the guilty plea," and by plea counsel's testimony at the evidentiary hearing. The motion court is in a better position to observe witnesses and assess their credibility. *Hickman v. State*, 950 S.W.2d 708, 709 (Mo. App. S.D. 1997). Thus, "[a]ppropriately, an appellate court is constrained to defer to the motion court's assessment of credibility of witnesses." *Id.* In this case, in reliance on plea counsel's testimony and Schaefer's testimony at the plea hearing, the motion court rejected Schaefer's testimony that plea counsel had promised him a three-year, "time served" sentence. The motion court's finding on this issue is not clearly erroneous, and is entitled to deference.

Respondent's Exhibit E, pp. 3-8.

The decision of the Missouri Court of Appeals is reasonable and therefore is entitled to deference under § 2254(d). The resolution of Ground 1 by the state court did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was

based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 412 (2000).[2]  Applying the Strickland standard of review to the facts as set forth in the record, the Court finds that counsel was not ineffective.

Ground 1 will be denied.

## GROUND 2 – PROCEDURAL DEFAULT

In Ground 2, petitioner contends that his guilty plea was given incompetently due to tortuous conditions at the jail where he was confined.  Respondent contends that Ground 2 is procedurally defaulted.

In Coleman v. Thompson, 501 U.S. 722 (1991), the Supreme Court held:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Id. at 750.  Cause, actual prejudice, and the probability of a "fundamental miscarriage of justice" are to be judged under criteria set out in Wainwright v. Sykes, 433 U.S. 72 (1977), and Murray v. Carrier, 477 U.S. 478 (1986).  Coleman, 501 U.S. at 748-50.

---

[2]According to the concurrence of Justice O'Connor, joined by four other members of the Court, "under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.  Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413, 120 S.Ct. at 1523.

A review of the record shows that petitioner did not raise Ground 2 on appeal from the denial of his amended Rule 24.035 post-conviction relief motion. Therefore, Ground 2 is procedurally defaulted and may not be reviewed by this Court unless petitioner can demonstrate cause and actual prejudice, or that failure to consider his claims will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750. The Court will not reach the "prejudice" component of the analysis unless it first finds that the petitioner has demonstrated "cause" for his procedural default.

Petitioner does not present any valid explanation for why this ground was not pursued on appeal from the denial of his Rule 24.035 motion and, therefore, has failed to demonstrate cause for his procedural default. As a result, we do not consider prejudice. The Court, however, can still reach the merits of his claim if petitioner can show that he is "probably actually innocent" of the crime for which he was convicted. Bowman v. Gammon, 85 F.3d 1339, 1346 (8th Cir. 1996), cert. denied, 520 U.S. 1128 (1997). To demonstrate his innocence, petitioner must satisfy a two-part test: First, he must support his allegations of constitutional error "with new reliable evidence. . . that was not presented at trial." Second, he must establish "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Id., citing Schlup v. Delo, 513 U.S. 298 (1995). Petitioner fails to make this showing.

Petitioner has failed to show cause for his default of Ground 2. He does not show that a manifest injustice will occur if this ground is not reviewed on the merits, and he has failed to meet the Schlup standard for actual innocence. Id. Therefore, federal review of Ground 2 is barred.

Ground 2 will be denied.

## CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where

a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." Tennard v. Dretke, 542 U.S. 274, 276 (2004). Because petitioner has not met this standard, a certificate of appealability will be denied. See 28 U.S.C. § 2254, Rule 11(a).

Accordingly, it is **ORDERED** that:

(1) the petition for writ of habeas corpus is **DENIED**;

(2) this case is **DISMISSED** with prejudice; and

(3) a certificate of appealability is **DENIED**.

/s/ Ortrie D. Smith
ORTRIE D. SMITH
UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,

Dated:  October 26, 2015.